Per Curiam;
This case was referred by the court, pursuant to Pule 45(a), to W. Ney Evans, a trial commissioner of the court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed January 21, 1960. When more than 15 days elapsed after the filing of this report and neither party gave notice of an intention to except to the commissioner’s findings or recommendations, defendant filed a motion for judgment in accordance with the recommendations of the commissioner. Since the court agrees with the findings and recommendations, of the commissioner, as herein *399 after set forth, it hereby adopts the same as the basis of its judgment in this case. Plaintiff is therefore not entitled to recover and his petition will be dismissed.
It is so ordered.
OPINION OF COMMISSIONER
The Bacharach Act,[1] approved May 29, 1928, provided annual rates of compensation for six categories of employees in the customs service: (1) laborers; (2) verifiers, openers, and packers; (3) clerks; (4) guards; (5) inspectors; and (6) station inspectors. Laborers were assigned one annual rate: $1,500. There were six salary brackets for verifiers, openers, and packers, ranging from $1,680 to $2,040; eight brackets for guards, ranging from $1,860 to $2,400; 13 brackets for inspectors, ranging from $2,100 to $3,300; and seven brackets for station inspectors, ranging from $3,000 to $3,600.
The clerks’ category was the only one for which the salary range was expressly made progressive. Following is the clerks’ provision:
(c) Clerks entrance salary, $1,700; clerks having one year’s satisfactory service, $1,800; clerks having two years’ satisfactory service, $1,900; clerks having three years’ satisfactory service, $2,000; clerks having four years’ satisfactory service, $2,100; thereafter promotion of clerks to higher rates of compensation shall be in accordance with existing law.
Inspectors’ salaries ranged, as heretofore noted, from $2,100 to $3,300. The progression of brackets was in units of $100 each. Section 2 of the act provided:
All new appointments of employees specified in section 1 shall be made at the minimum rate of the appropriate salary range.
The Need-Jenkins Act,[2] approved May 29, 1928, divided immigrant inspectors into five grades, numbered 1 through 5, and established salary brackets ranging from $2,100 to $3,000. The act further provided:
* * * hereafter, inspectors shall be promoted successively to grades 2 and 3 at the beginning of the next *400 quarter following one year’s satisfactory service * * * in the next lower grade; not to exceed 50 per centum of the force to grades 4 and 5 for meritorious service after no less than one year’s service in grades 3 and 4, respectively: Provided * * * That promotion above grade 3 shall be at the discretion of the Secretary of Labor * * *.
The act of November 26, 1940,[3] authorized the President by Executive order to extend the provisions of the Classification Act of 1923 to any positions not then subject to such provisions, with certain exceptions. Among the exceptions were all of the positions in the customs service covered by the Bacharach Act and the positions of immigrant inspectors covered by the Reed-Jenkins Act.
The Ramspeck-Mead Act,[4] approved August 1, 1941, amended the foregoing statute by deleting from the exceptions all of the positions covered by the Bacharach Act except laborers and clerks, and directed the Secretary of the Treasury to allocate “the other positions heretofore covered by [the Bacharach] Act * * * to the services and grades of the compensation schedules of the Classification Act of 1923.” Thereafter, the Secretary of the Treasury accordingly allocated to the classified service the former Bacharach positions of verifiers-openers-packers, guards, inspectors, and station inspectors of the customs service. The allocation of the inspectors’ positions was effected on September 1, 1941.
The Ramspeck-Mead Act also amended the Classification Act of 1923 by providing, for the first time, for one-step within-grade promotions at specified intervals of employees who had not attained the maximum rate of compensation for the grade of their respective positions.
The act of August 1, 1942,[5] removed laborers in the customs service from the coverage of the Bacharach Act and placed them in the classified service. Thereafter, only the clerks remained subject to the Bacharach Act. Immigrant inspectors had not been covered into the classified service. They remained subject to the Reed-Jenkins Act.
The Classification Act of 1949,[6] approved October 28, 1949, applied to “all civilian positions, officers, and employ *401 ees in or under the departments” subject to certain exclusions not here material. Upon its adoption clerks in the customs service and inspectors in the immigration service were covered into the classified service. The Bacharach Act and the Reed-Jenkins Act thereupon became obsolete. The latter was repealed in 1952 by the Immigration and Nationality Act,[7] while the former was repealed by the act of September 3, 1954,[8] “correcting obsolete references.”
Title VII of the Classification Act of 1949 liberalized the within-grade step increases originally provided by the Ramspeck-Mead Act, by raising the amounts and shortening the time, and provided, for the first time, for longevity increases for those employees who had been at the maximum rates of their respective grades for 3 years and who met certain other qualifications. Pertinent portions of the text of these provisions are set forth in finding 10(b).
At the time of the adoption of the Classification Act of 1949, and its attendant transfer of clerks in the customs service from the Bacharach Act to the classified service, some of the clerks had had 10 or more years of service in the same position and had served for 3, 6, or 9 years, or more, at the top salary rate prescribed by the Bacharach Act. The Civil Service Commission nevertheless declined to credit them with such service toward longevity increases provided by the Classification Act of 1949 because, in the opinion of the Commission, “a careful review of the language of the Act and its legislative history failed to disclose any evidence of a positive intent on the part of Congress that such credit should be given.” The customs clerks were accordingly advised that “* * * if credit for such service under the Bacha-rach Act was to he given, * * * amendatory legislation would be required.”
Sometime during the early months of 1950 the House of Representatives passed and sent to the Senate H.R. 7889, a bill “to postpone the application of the Classification Act of 1949 to certain employees of the Selective Service System.” When this bill reached the floor of the Senate, an amendment was offered from the floor and adopted by the Senate without discussion. The amendment (as incorporated in the act *402 of June 28, 1950,[9] unchanged from the form in which it passed the Senate) added to the longevity provision of the Classification Act of 1949, the following:
Officers and employees who are otherwise eligible shall receive full credit under this subsection for service at the maximum authorized salary rate specified in the Bacharach Act of May 29, 1928, as amended and supplemented, and the Keed-Jenkins Act of May 29, 1928, as amended, to the same extent as if such service had been at the maximum rate of a grade of the Classification Act of 1923, as amended.
H.R. 7889, as amended by the Senate on June 8,1950, was returned to the House of Representatives for its concurrence in the amendment. On June 12, 1950, the Chief Counsel of the Committee on Post Office and Civil Service of the House of Representatives telephoned the Civil Service Commission for a report on the bill, as amended. The Chairman of the Civil Service Commission responded, on June 14, 1950, by letter to the Chairman of the Committee.[10]
The letter advised that “the situation giving rise to this matter was” (as heretofore noted) that some of the customs clerks who were otherwise qualified for longevity credits under the Classification Act had been denied them because the Commission had failed to find in the Classification Act evidence of a positive intent on the part of the Congress that such credit should be given. The letter also referred to immigration inspectors under the Reed-Jenkins Act, but indicated that the amendment would affect few, if any, of such inspectors. Summarizing, the letter said:
On the basis of the best information available a total of not more than 75 to 100 employees (Bacharach and Reed-Jenkins combined) would benefit under the amendment. * * *
These two employee groups are the only ones which, prior to their inclusion under the Classification Act, were paid on the basis of specific statutory pay ranges. * * *
The Commission believes that the amendment has considerable merit and would not object to its enactment.
*403 Thereafter, the House of Representatives concurred in the Senate amendment of H.R. 7889, and the bill became the act of June 28,1950.[11]
Plaintiff’s case rests on the premise that he, as a customs inspector, was entitled, upon the approval of the act of June 28, 1950, to longevity credits under the Classification Act of 1949 by reason of his service as a customs inspector under the Bacharach Act, which credits have been denied him.
Plaintiff began his service as a customs inspector on November 4, 1929, under the Bacharach Act. He remained in the Bacharach position until September 1, 1941, when his position was allocated to the classified service as CAF-5, pursuant to the act of August 1,1941. His Bacharach service thus extended over a period of approximately 11% years. The position remained unchanged during all of this time, and the salary was fixed at $2,100 from November 4, 1929, through June 30, 1939, a period of a little more than 9*/2 years.
Plaintiff and defendant join issue[12] on the meaning of the words “service at the maximum authorized rate specified in the Bacharach Act” as used in the act of June 28, 1950.
Plaintiff contends that his Bacharach service was at the maximum authorized rate specified in the act because the entrance salary, although the minimum of the scale, was the maximum payable to him as a new appointee at the time his service began, and because the Bureau of Customs failed or refused to authorize any change in the salary bracket. Nine years and more at the maximum authorized rate should, he contends, entitle him to three longevity increases under the Classification Act of 1949, and these increases, he says, should have been given to him upon the adoption of the act of June 28,1950.
Plaintiff’s contention would ascribe the word “specified” to the Bacharach Act itself, while the words “maximum authorized” would be ascribed to administrative action by the Bureau of Customs.
Defendant would ascribe all of the words “maximum au *404 thorized rate specified” to the Bacharach Act, without reference to administrative action by the Bureau of Customs. So interpreted, the “maximum authorized rate specified in the Bacharach Act” was $3,300, a bracket which plaintiff never attained.
"With respect to the Civil Service Commission’s reference to clerks, as posing the situation which gave rise to the amendatory legislation, plaintiff’s contention is that the statute (the act of June 28, 1950) is stated in general terms, wherefore its application to “officers and employees who are otherwise eligible” covers him as an inspector as well as the clerks.
If, at the time of the adoption of the Classification Act of 1949, plaintiff had been compensated on the basis of the statutory rates specified in the Bacharach Act, his claim of coverage by general legislation might well be valid, in spite of the fact that the Civil Service Commission mentioned only clerks. But plaintiff was not so compensated at that time. His position had been allocated to the classified service 8 years earlier.
The sequence of events in the adoption of the amendment upon which plaintiff relies is such as to defeat his contentions. His case must therefore fail.
Assuming (as plaintiff contends) that the amendment was offered in the Senate for the purpose of rewarding all former Bacharach Act employees generally for long and faithful service, by crediting such service toward longevity increases under the Classification Act of 1949, the fact would avail plaintiff nothing in view of the way in which the concurrence of the House of Representatives in the amendment came about.
The Civil Service Commission determined (and reported its determination to the responsible Committee of the House of Representatives) that the amendment, if adopted, would apply only to those employees of the customs and immigration services who were being compensated, at the time of the adoption of the Classification Act of 1949, on the basis of rates specified in the Bacharach Act and the Reed-Jenkins Act. The interpretation upon which this determination was based is in keeping with normal legislative intent to act prospectively upon an existing situation.
*405 Considering the nature of the views expressed by the Civil Service Commission, and the fact that the House of Representatives concurred in the amendment after those views had been communicated to the responsible Committee of the House of Representatives and without further explanation or comment by the Committee, any interpretation of the act of June 28, 1950, which would extend its application beyond the situation existing at the time of the adoption of the Classification Act of 1949 would not be warranted by the facts.
Under the circumstances it is unnecessary to pass upon the issue raised by counsel as to the meaning of the words “service at the maximum authorized salary rate specified in the Bacharach Act.”[13]
FINDINGS OF FACT
I
1. Plaintiff[1] is, and for more than 80 years has been, an inspector of customs[2] at the port of Detroit. His service record is set forth in Table 1, which is incorporated herein by reference.
2. (a) Plaintiff’s position, at the time of his appointment on November 4,1929, was not graded under the Classification Act of 1923. The position remained ungraded until September 1, 1941, when, pursuant to authority contained in the Ramspeek-Mead Act,[3] it was allocated to grade CAF-5.
(b) During the period from November 4, 1929, the date of plaintiff’s appointment, to October 1, 1941, one month after the position was allocated to the classified service, plaintiff received only one increase in salary, in the amount of *406 $100, effective July 1, 1939. His salary therefore remained at $2,100 for 9 years, 6 months, and 26 days. His service in an ungraded position extended over a period of 11 years, 8 months, and 27 days.
3. (a) Salary rates for customs inspectors, at the time of plaintiff’s appointment, and until the allocation of the positions to the classified service, were fixed by the act of May 29, 1928,[4] popularly known as the Bacharach Act. The minimum salary was $2,100, and the statute required new appointees to be started at that rate, making it the maximum rate for new appointees.
(b) Thirteen salary brackets were authorized by the Bacharach Act for customs inspectors. The range began *407 at $2,100 and extended in units of $100 each to $3,300. During the period from 1929 to 1941 the Bureau of Customs was, for budgetary reasons, chary in moving inspectors from one bracket to another. At the port of Detroit all of the inspectors remained in the entrance salary bracket from 1929 to 1939, except the few who were assigned supervisory duties, and possibly two or three others who were given “promotions” for meritorious service or longevity or both. Similar policies governed the service as a whole. The Bureau had no general plan for salary increases applicable to all inspectors.
*406 Table 1. — Charles C. Martin — Inspector of Customs — Service Record
Personnel action Effective date Grade of position Annual salary Explanatory notes
Appointment-Nov. 4,1929 Ungraded. $2,100.00 Qualified by examination.
Appointment— Probational. June 16,1930 Ungraded. 2,100.00 Permanent status followed.
Salary increase... July 1,1939 Ungraded. 2,200.00 Listed as promotion. Finding
Classified allocation. Sept. 1,1941 CAP-5_ 2,200.00 Pursuant to statute.[1]
Salary increase_ Oct. 1,1941 OAF-5.... 2,300.00 As above.
Reallocation_ Jan. 1,1943 CAF-6.... 2,300.00 Pursuant to statute.[2]
Salary Apr. 1.1943 2,400.00 As above.
Salary increase_ Oct. 1.1944 CAF-6.... 2,500.00 In-grade step increase.
Reallocation_ Apr. 1.1945 CAF-7.... 2,600.00 Administrative action.
Salary increase_ July 1.1945 CAF-7.... 2,980.00 Pursuant to statute.[3]
Salary increase_ Apr. 7.1946 CAF-7.... 3,090.00 In-grade step increase.
Salary increase_ July 1.1946 CAF-7_ 3,522.60 Pursuant to statute.[4]
Salary increase_ Apr. 20.1947 CAF-7_ 3,648.00 In-grade step increase.
Salary increase_ May CAF-7.... increase.
Salary increase_ July 11.1948 CAF-7.... 4.103.40 Pursuant to[5] statute.*
Salary increase_ May 15.1949 CAF-7.... 4,228.80 In-grade step increase.
Conversion allocation. Oct. 30.1949 GS-7. 4,325.00 Pursuant to statute.[6]
Salary increase_ May 14.1950 GS-7.. 4,450.00 In-grade step increase.
Salary increase_ May 13.1951 GS-7.. 4,575.00 Step increase to maximum rate.
Salary increase_ Oct. 24.1951 GS-7.. 4,955.00 Pursuant to statute [7]
Reallocation_ Aug. 2.1953 GS-8.. 5,129.00 Fifth step.
Salary increase_ Aug. 1.1954 GS-8.. 5,245.00 Sixth step.
Salary increase_ ? 1955 GS- 8.. 5,645.00 Pursuant to statute.[8]
Salary increase_ July 31.1955 GS-8.. 5,780.00 Step increase to maximum rate.
Reallocation_ Jan. 1,1956 GS-9.. Fifth
Reallocation.._ Jan. 29.1956 GS-8.. 5,780.00 Pursuant to employee's request.
Salary increase.. Aug. 1,1958 GS-8.. Longevity Increase.
*407 (c) In 1939, Congress took cognizance of the situation and made provision for a modest increase in the salaries of customs inspectors by allocating additional funds for the purpose to the Bureau of Customs.[5] Plaintiff and others in his category at the port of Detroit were moved from the $2,100 bracket to the $2,200 bracket. The Bureau of Customs listed the action, administratively, as “promotions.”[6]
4. (a) Since the allocation of the position to the classified service, plaintiff has received salary increases on 21 occasions. Six of the increases were provided by statutes increasing the pay of Federal employees generally. Five of the increases followed allocation or reallocations of the position.[7] Nine increases represented step increases within grade, and one was based on longevity.
*408 (b) Plaintiff’s position was graded CAF-5 from September 1,1941, through December 31,1942, a period of 16 months.
Grade CAF-6 extended over a period of 26 months, from January 1,1943, through March 31,1945.
Grade CAF-7 extended from April 1,1945, through October 29,1949, a period of 4% years, during which time plaintiff received four step increases within grade, being one each year.
Grade GS-7 extended from October 30, 1949, through August 1, 1953, a period of 3 years and 9 months, during which time plaintiff received two step increases to reach the maximum rate of the grade on May 13, 1951, in which he remained for 2 years and 2 months before the position was reallocated to GS-8, fifth step.
Plaintiff remained in GS-8 after August 2, 1953, reaching the maximum rate of the grade on July 31, 1955. Three years later he was given a longevity increase.
(c) After the allocation of the position to the classified service, plaintiff never completed 3 years at the maximum rate of his grade prior to the time of the filing of the petition [8] in this case.[9]
(d) All of plaintiff’s efficiency ratings were “good” or better than “good.”
II
5. (a) Following is the text of sections 1 and 2 of the Bacharach Act:[10]
* * * the following annual rates of compensation are hereby established for the employees in the customs service hereinafter specified:
(al Laborers, $1,500.
(b) Verifiers, openers, and packers, $1,680, $1,740, $1,800, $1,860, $1,920, $1,980, and $2,040.
(c) Clerks, entrance salary, $1,700; clerks having one year’s satisfactory service, $1,800; clerks having two years’ satisfactory service, $1,900; clerks having three years’ satisfactory service, $2,000; clerks having four *409 years’ satisfactory service, $2,100; thereafter promotion of clerks to higher rates of compensation shall be in accordance with existing law.
(d) Customs guards, $1,860, $1,920, $1,980, $2,040, $2,100, $2,200, $2,300, and $2,400.
(e) Inspectors, $2,100, $2,200, $2,300, $2,400, $2,500, $2,600, $2,700, $2,800, $2,900, $3,000, $3,100, $3,200, and $3,300.
(f) Station inspectors, $3,000, $3,100, $3,200, $3,300, $3,400, $3,500, and $3,600.
Seo. 2. All new appointments of employees specified in section 1 shall be made at the minimum rate of the appropriate salary range.
(b) The Bacharach Act was repealed on September 3, 1954.[11]
6. (a) Following is the pertinent portion of the text of another act of May 29, 1928,[12] popularly known as the Keed-Jenkins Act, being “An Act to amend section 24 of the Immigration Act of 1917”:
Immigrant inspectors shall be divided into five grades, as follows: Grade 1, salary $2,100; grade 2, salary $2,300; grade 3, salary $2,500; grade 4, salary $2,700;
Eade 5, salary $3,000; and, hereafter, inspectors shall promoted successively to grades 2 and 3 at the beginning of the next quarter following one year’s satisfactory service (determined by a standard of efficiency which is to be defined by the Commissioner General of Immigration, with the approval of the Secretary of Labor) in the next lower grade; not to exceed 50 per centum of the force to grades 4 and 5 for meritorious service after no less than one year’s service in grades 3 and 4, respectively: Provided further, That promotion above grade 3 shall be at the discretion of the Secretary of Labor, upon the recommendation of the Commissioner General of Immigration:
(b) The Keed-Jenkins Act was repealed by the act of June 27, 1952.[13]
7. (a) The act of November 26, 1940,[14] authorized “* * * *410 the President * * * by Executive order * * * [and] * * * subject to * * * limitations * * * to * * * extend the provisions of the Classification Act of 1923 * * * to any * * * offices or positions not at the time subject to such provisions * * * except * * *:
* * * (viii) Offices or positions of verifiers-openers-packers, clerks, guards, inspectors, station inspectors, and laborers in the Customs Service of the Treasury Department the compensation of which is fixed under an Act of Congress approved May 29, 1928 (45 Stat. 955) * * * [and]
(ix) Offices or positions of inspectors in the Immigration and Naturalization Service * * * the compensation of which is fixed under an Act of Congress approved May 29, 1928 (45 Stat. 954) * * *.
(b) The act of August 1, 1941,[15] amended the foregoing statute “* * * by deleting from * * * (viii) the words ‘verifiers, openers, packers, guards, inspectors, station inspectors’ so that the paragraph as 'amended will read as follows
(viii) Offices pr positions of clerks and laborers in the Customs Service of the Treasury Department, the compensation of which is fixed under an Act of Congress approved May 29, 1928 (45 Stat. 955) * * *.
(c) The act of August 1, 1941, above, further directed the Secretary of the Treasury “upon the passage of this Act” [to] :
* * * allocate to the services and grades of the compensation schedules of the Classification Act of 1923, as amended, the other positions heretofore covered by said Act of May 29, 1928, in the same manner as other positions in the field service of the Treasury Department are allocated
(d) After the passage of the act of August 1, 1941, all of the positions theretofore covered by the Bacharach Act, with the exception of clerks and laborers, were allocated “to the services and grades of the compensation schedules of the Classification Act of 1923, as amended * *
(e) Laborers were removed from the Bacharach Act and placed in the classified service by the act of August 1,1942,[16] *411 leaving only section 1(c) of the Bacharach Act operative. This was the provision relating to clerks. It remained in effect until the passage of the Classification Act of 1949.[17]
8. The .act of August 1, 1941, popularly known as the Ramspeck-Mead Act, was “An Act to amend the Classification Act, as amended.” Among its provisions were the following:
All employees compensated on a per annum basis, and occupying permanent positions within the scope of the compensation schedules fixed by this Act, who have' not attained the maximum rate of compensation for the grade in which their positions are respectively allocated, shall be advanced in compensation successively to the next higher rate within the grade at the beginning of the next quarter following the completion of: (1) Each eighteen months of service if such employees are in grades in which the compensation increments .are $60 to $100, or (2) each thirty months if such employees are in grades in which the compensation increments are $200 or $250 * * *.
9. (a) The Classification Act of 1949[18] declared its purpose to be “* * * to provide a plan for classification of positions and for rates of basic compensation * * and provided that its terms should apply “* * * to all civilian positions, officers, and employees in or under the departments,” excluding only the “exemptions specified.”
(b) The specified exemptions did not include (1) clerks in the Customs Service (theretofore compensated under the Bacharach Act) or (2) inspectors in the Immigration Service (theretofore compensated under the Reed-Jenkins Act). These positions were accordingly allocated to the classified service after the adoption of the Classification Act of 1949.
10. (a) Title VII of the Classification Act of 1949 provided for step increases, after the pattern of the Ramspeck-Mead Act, following the completion of (1) each fifty-two calendar weeks of service in positions in which the step increases were less than $200 and (2) each seventy-eight calendar weeks of service in positions wherein the step increases were over $200.
*412 (b) Title YII also contained the following provision:
(a) * * * as a reward for long and faithful service, each department shall grant an additional step-increase (to be known as a longevity step-increase) _ beyond the maximum scheduled rate of the grade in which his position is placed, to each officer or employee for each three years of continuous service completed by him at such maximum rate or at a rate in excess thereof authorized by this section without change of grade or rate of basic compensation except such change as may Jbe prescribed by any provision of law of general application. _
_ (b) (1) No officer or employee shall be entitled to a longevity step-increase while holding a position in any grade above grade 10 of the General Schedule.
(2) No officer or employee shall receive a longevity step-increase unless his current efficiency rating is “good” or better than “good”, and his service and conduct are certified as being otherwise satisfactory by the department.
(3) No officer or employee shall receive more than one longevity step-increase for any three years of continuous service.
(4) Each longevity step-increase shall be equal to one step-increase of the grade in which the position of the officer or employee is placed.
(5) Not more than three successive longevity step-increases may be granted to any officer or employee.
(6) The officer or employee shall have had, in the aggregate, not less than ten years of service in the position which he then occupies, or in positions of equivalent or higher class or grade.
11. (a) The act of June 28,1950,[19] amended the Classification Act of 1949 by inserting at the end of section 703(a) thereof[20] a new sentence as follows:
Officers and employees who are otherwise eligible shall receive full credit under this subsection for service at the maximum authorized salary rate specified in the Bacharach Act of May 29,1928, as amended and supplemented, and the Eeed-Jenkins Act of May 29, 1928, as amended, to the same extent as if such service had been at the maximum rate of a grade of the Classification Act of 1923, as amended.
(b) The foregoing provision was offered on the floor of the Senate by Senator Langer as an amendment to a bill *413 that had passed the House of Representatives as H.R. 7889, being a bill “To postpone the application of the Classification Act of 1949 to contain employees of the Selective Service System.” There was no discussion of the amendment in the Senate, nor was the provision mentioned in reports of the proposed legislation to either the Senate or the House of Representatives.
(c) On June 14, 1950, the Chairman of the Civil Service Commission wrote the following letter to the Chairman of the Committee on Post Office and Civil Service of the House of Representatives:
Reference is made to the telephoned request of Mr. George Moore, Chief Counsel, House Committee on Post Office and Civil Service, on June 12,1950, for a further report on H.R. 7889, a bill, “To postpone the application of the Classification Act of 1949 to certain employees of the Selective Service System” as the bill was amended at the instance of Senator Langer on June 8, 1950.
*****
The situation giving rise to this matter was that some Customs Clerks recently brought within the scope of the Classification Act of 1949, had ten or more years of service in the same position and had served for three, six or nine years, or more, at the top salary rate prescribed by the Bacharach Act. It was the contention of certain employee groups that the Commission should give full credit for this service toward longevity step-mcreases provided by section 703 of the Classification Act rather than to require that all such service at a maximum rate or at a rate in excess thereof be performed under the Classification Act. A careful review of the language of the Act and its legislative history failed to disclose any evidence of a positive intent on the part of Congress that such credit should be given. Therefore, the Commission, determined that if credit for such service under the Bacharach Act was to be given that amendatory legislation would be required.
The Bacharach Act of May 29, 1928, as amended and supplemented, provided a statutory salary range of five pay steps for customs clerks. The entrance rate was $2598.60. The maximum rate, $3100.20, was attainable after four years satisfactory service. Because the rate of $3100.20 is above the maximum scheduled rates for grades GS-1 and 2, employees converted to those grades under provisions of the Classification Act of 1949 would, *414 by virtue of the savings clause in that Act, retain the salary of $3100.20 as long as they remained in their present position, or until they were eligible for longevity step-increases under section 703.
Customs Clerks at $3100.20 converted to grade GS-2 carry over that salary rate which is above the maximum scheduled rate of GS-2. Under. present law. these employees would require at least nine years additional service under the Classification Act at $3100.20 before they could receive a pay increase to $3170, the top longevity step-increase. Customs Clerks receiving $3100.20 converted to GS-3 would receive the maximum scheduled rate of that grade. Since conversions to grades GS-4 and higher of employees receiving $3100.20 would be within the scheduled pay ranges of those grades they would not be benefited by the amendment.
Some of the older Customs Clerks who are in the grades affected by the amendment have been at the top Bacharach rate for many years and because of the organization of the work, there is little immediate hope for their advancement. Current law and. regulations would require three, six or nine years additional service before a longevity step-increase could be granted. The effect of the amendment would be to credit the number of years served at the top Bacharach rate, by employees converted to GS-2 and 3, toward the time requirements for longevity step increases. It would not decrease or alter in any way the time requirements of section 703 (a).
The Reed-Jenkins Act of May 29, 1928, as amended, established a five rate pay scale for immigration inspectors the top rate of which was $4228.80. It is believed that all immigration inspectors receiving this rate were placed either in grade GS-7 or GS-8, depending upon the duties, responsibilities and qualification requirements of the position. Since in either case the pay conversion would be to an intermediate salary step in the grade in which they were placed no problem is encountered and the amendment would have no effect. However, it is possible that a very few positions on which we do not have records might have been placed in grade GS-6. In such an instance the top Reed-Jenkins rate exceeds the maximum scheduled rate for GS-6 and the same situation would obtain as described for Customs Clerks in grade GS-3.
On the basis of the best information available a total of not more than 75 to 100 employees (Bacharach and Reed-Jenkins combined) would benefit under the amend *415 ment. All, or nearly all, of these employees are in grades GS-2 and 3.
These two employee groups are the only ones which, prior to their inclusion under the Classification Act, were paid on the basis of specific statutory pay ranges. Other major groups brought under the Act would not be discriminated against because, in the past, their employing agencies have had broad administrative authority in making pay adjustments as contrasted to the restricted pay limitations established in law for the Customs Clerks and Immigration Inspectors.
The Commission believes that the amendment has considerable merit and would not object to its enactment.
* * * *
12. (a) After adoption of the amendment of the Classification Act of 1949 described in finding 11(a), the Bureau of Customs granted longevity increases to customs clerks who, in the opinion of the Bureau, were entitled thereto under the terms of the statute.
(b) The Bureau of Customs made no similar review of the positions of customs inspectors.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and his petition is therefore dismissed.

 45 stat. 955.

 45 Stat. 954.

 54 Stat. 1211.

 55 Stat. 613.

 56 Stat. 733.

 63 Stat. 954.

 66 Stat. 163, 279.

 68 Stat. 1226, 1231.

 64 Stat. 262.

 Pertinent portions of the text of the letter are set forth In finding 11(e).

 64 Stat 262.

 Other qualifications are not In dispute. Plaintiff had served more than 10 years in the same position, and his efficiency ratings were always “good” or better than “good”.

 As noted at the outset of this opinion, the Bacharach Act’s provision for customs clerks directed their progression from the entrance salary to the fifth step after 4 years’ satisfactory service, and authorized their promotion to higher rates of compensation “In accordance -with existing law.” While the clerks’ situation has not been fully developed by the evidence, the words “service at the maximum authorized salary rate specified In the Bacharach Act” may have been directed to the specified rate of the fifth step, since it was “the maximum authorized rate specified In the * * * Act."

 Plaintiff is a citizen of the United States and a resident of Detroit, Michigan.

 At the time of plaintiff’s appointment the title of the position was “inspector”. In 1948, the title was changed to “customs inspector”. No change of duties was involved.

 Act of August 1, 1941, 55 Stat. 618.

 Act Aug. 1,1941 (known as Ramspeck-Mead Act), 55 Stat. 613,

 Classification Act of 1923,42 Stat. 1488, as amended.

 Federal Employee* Pay Act of 1945, approved Juno 30,1945, 59 Stat. 295.

 Federal Employment Pay Act of 1946, approved May 24, 1946, 60 Stat 210.

 Federal Employees Pay Act of 1946, as amended July 3,1948,62 Stat. 1268.

 Classification Act of 1949, approved Oct. 28, 1949, 63 Stat. 954.

 Act of Oct. 24,1951, amending Classification Act of 1949, 65 Stat. 612.

 Federal Employees Salary Increase Act of 1955, approved June 28, 1955,69 Stat. 172.

 45 Stat. 955.

 The act of May 6, 1939, making appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1940, 03 Stat. 604, 609. The act contains no specific reference to the authorization of salary increases. The authorization is contained, Instead, In Report No. 98, 76th Congress, 1st Session, to the House of Representatives, filed February 24, 1939, to accompany H.R. 4492. Therein, the Committee on Appropriations referred (at p. 7) to the “* * * difficult problems * * * Involving the amounts allowed by the Bureau of the Budget for administrative promotions of employees In the Treasury Department.” The Committee thereupon suggested “• ■* * a scientific appraisal of this entire question * * and “* * * eliminated all sums carried in the Budget estimates for administrative promotions * * * with the exception of a group of employees In the Customs Service * * Later (at p. 17) the Committee explained the exception and approved an Item to provide one-step administrative promotions for employees drawing $3,000 or less, excluding aU employees “who had received an administrative promotion since the fiscal year 1931.”

 The description was in keeping with terminology then current in the Bureau of the Budget and the Committees on Appropriations of the Congress. Of. the preceding footnote.

 The evidence contains no explanation of the growth of a CAF-S position to the grade of GS-9. The duties of the position remained the same throughout.

 The petition was filed on June 27, 1956.

 Plaintiff does not dispute the fact. The finding is so stated to lend emphasis to plaintiff’s contention that, prior to the allocation of his position to the classified service, he served at the maximum rate of his grade for more than 9 years.

 Approved May 29, 1928, 45 Stat. 955. The act was amended by the act of December 12, 1930 (46 Stat. 1026), in particular pot material here.

 Section 13(b) of tbe act of September 3, 1954, 68 Stat. 1226', 1231. This •was “An Act to amend various statutes and contain titles of the united States Code, for tbe purpose of correcting obsolete references.”

 45 Stat. 954.

 66 Stat. 163, 279. This was the Immigration and Nationality Act. The repeal clause applied to the Immigration Act of 1917, approved February 5, 1917, 39 Stat. 874.

 54 Stat. 1211.

 65 stat. eis.

 56 Stat. 733.

 Act of October 28, 1949, 63 Stat. 954.

 Act of October 28, 1949, 63 Stat. 954.

 64 Stat. 262.

 Subsection (a) of section 703 is quoted in finding 10(b) above.